COOPER v. DENNIS SHEEN TRANSFER, INC.

(November 3, 1931. Opinion and Decree.)

A. Melville Wolfson, of New Orleans, attorney for plaintiff, appellant.

Leslie P. Beard and Alvin B. Christovich, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Tom Cooper, a laborer, received injuries on February 5, 1929, while working for his employer, Dennis Sheen Transfer, Inc.

He was a member of a labor gang engaged in unloading creosoted telephone posts and pilings. The facts of the accident are not in controversy and are related by counsel for Cooper as follows:

"The gang, while attempting to lift this piling, had lifted it high enough to get a truck under it. When the piling rolled off the truck, one end pinned the plaintiff, Cooper, against a box car, in such a position that the right hand of Cooper was resting against his shoulder, with the right elbow pinned against his right side, with Cooper's body crushed against a box car. This piling weighed about 2,000 pounds."

On the next day, February 6, 1929, Cooper was sent by defendant, or its insurer, to Dr. H. B. Gessner, by whom he was treated until March 9, 1929, on which day he was discharged as cured. During that period of slightly more than one month he was seen on practically each second day by Dr. Gessner and treated by him for a sprained or strained back, and at no time during that period did he tell Dr. Gessner that he was suffering from a hernia. Nor did he tell the doctor of any pain or other trouble than that located in his back.

For the period of his disability he received compensation payments, and no claim for any portion of that time is now made.

Shortly after his discharge by Dr. Gessner, Cooper, on visiting a doctor of his own selection, was found to be suffering from a right inguinal hernia, and claim is now made for compensation based on permanent total disability on the averment that the hernia was caused by or resulted from the injury of February 5th.

The trial court, finding that there was no direct or indirect connection between the accident of February 5th and the her-

nia of which Cooper now complains, rendered judgment dismissing the suit, and from that judgment Cooper has appealed.

An attempt is made to show by two of Cooper's fellow laborers that about two weeks after the accident, and while Cooper was still under Dr. Gessner's treatment, he was suffering from hernia. These men stated that they visited him; that they were familiar with the external appearance of protuberances caused by hernia, and that there can be no doubt that Cooper was at that time the victim of a large hernia, which they themselves saw; that the protuberance was so large that it would fill two hands cupped together.

It is admitted that at no time did Cooper tell Dr. Gessner of such a lump, nor did he complain of any pain in that locality. Explanation of Cooper's failure in this regard is sought to be found in the theory that Cooper had a peculiar philosophy to the effect that it was the doctor's duty to discover for himself what was wrong.

This theory cannot be accepted. It strains credulity to the breaking point for two reasons: First, because no man suffering such an injury as Cooper is said to have sustained, and with a hernia so large as that which the witnesses claim to have seen, would have visited a doctor without at once calling such a thing to his attention; and, second, because, even without his attention having been directed to it, we cannot believe that an experienced, capable physician would have overlooked such an obvious extreme abnormality. We, therefore, say without hesitation, that when Dr. Gessner discharged Cooper on March 9th, no hernia had exhibited itself.

Of course, if it later developed as a result of the accident, the liability of the defendant would result, and since there is

no doubt that a hernia did later develop, it might have been difficult for defendant to have avoided legal responsibility therefor, but for the admitted fact that on March 10th, after his discharge by Dr. Gessner, Cooper sustained another injury in no way connected with his employment and, immediately thereafter, exhibited signs of intense pain and suffering. He says that on that day, as he attempted to chop some firewood for his own use, he struck himself in the side with an axe.

It seems to be well established that when a hernia occurs, immediate pain is the result, and it is highly improbable that a hernia could have been sustained on February 5th, when the first accident occurred, since at that time no pain or outward evidence of hernia was manifest at the spot at which the real hernia was afterwards discovered; whereas, after the second accident on March 10th, immediate and intense pain was suffered in the immediate locality of the hernia and, shortly thereafter, the second doctor consulted discovered that a hernia actually did exist.

It is suggested that, possibly, the hernia had been caused by the first accident and that the blow by the axe at the time of the second accident had caused strangulation of the already existing hernia, with the resulting extreme pain. This theory cannot be accepted because, as we have already said, no immediate pain in that spot was suffered on February 5th, and further because, had there been a strangulation on March 10th, it is practically certain that an emergency operation would have been advised, since all the physicians agree that the strangulation of a hernia is most serious and usually causes death, unless relieved by an operation. The evidence shows that there has never been an operation.

We believe that the accident of February 5th had no connection whatever with the ultimate hernia and that defendant is in no way responsible for the condition now complained of.

The judgment appealed from is affirmed, at the cost of appellant.