BURGESS v. AMERICAN SAFE DEPOSIT CO., INC.

(March 7, 1932.  Opinion and Decree.)
(April 4, 1932.  Rehearing Refused.)
(April 25, 1932.  Writs of Certiorari and Review Refused by Supreme Court.)·

Puneky & Barrios and Gerald A. Rault, of New Orleans, attorneys for plaintiff, appellee.

Frank T. Doyle and Harry M. Mayo, Jr., of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Transito Burgess, a window washer in the employ of American Safe Deposit Company, Inc., claims that on September 24, 1930, while engaged at his work, he had disengaged from the building, in which he was washing a window, one of the two straps which was attached to his safety belt, when he slipped on the window sill, causing the entire weight of his body to be thrown on the said safety belt, and that his back, while he was swinging suspended by the belt and the strap attaching it to the building, struck a part of the radiator, or some other object inside the structure.

He maintains that the said blow to his back, or the sudden strain on his abdomen, caused by the unexpected and violent throwing of his weight on the safety belt, ruptured the abdominal wall of his body, causing a hernia. Contending that he has been permanently and toally disabled, he seeks to recover compensation for 400 weeks at $9.75 per week, as well as $24.99 claimed to have been expended for medicines.

The district court rendered judgment in his favor for $3,900, and defendant has appealed.

On the day of the accident, September 24, 1930, or immediately after it, Burgess called at the office of Dr. W. R. Brewster, a physician designated by defendant, and, according to Dr. Brewster, complained only of an injury to his back. The physician found a contusion of the back and applied adhesive straps. Burgess was under the care of Dr. Brewster until October 8, at which time he was discharged as able to return to work, and he thereafter continued to perform his duties until December 24, more than two and one-half months later, at which time he was discharged by his employer for causes not associated with his physical condition.

On the next day, December 26, he returned to Dr. Brewster, and on that day, for the first time, according to Dr. Brewster, complained that he was suffering from hernia.

Examination disclosed the complaint to be well founded.

Burgess maintains that the hernia had come into existence on September 24, when he first sustained the injury to which we have referred and that, at that time, Dr. Brewster was told by him of its existence.

We cannot believe that Dr. Brewster would have forgotten so important a fact as the existence of a hernia, and it is incredible that he would not have noticed such a thing, even had he not been told of it, if, in fact, it really existed, because he states that, while he did not particularly examine for hernia, "had one been present, I would have seen it during the process of strapping which included a complete circular strapping."

We find the facts of the case remarkably similar to those which were present in Cooper v. Dennis Sheen Transfer, Inc., 17 La. App. 682, 137 So. 383, 384, in which, with regard to the probability of experienced doctors overlooking a hernia, we said:

"* * * No man suffering such an injury as Cooper is said to have sustained, and with a hernia so large as that which the witnesses claim to have seen, would have visited a doctor without at once calling such a thing to his attention; and, second, because, even without his attention

having been directed to it, we cannot believe that an experienced, capable physician would have overlooked such an obvious extreme abnormality. We, therefore, say without hesitation that when Dr. Gessner discharged Cooper on March 9th, no hernia had exhibited itself."

If, as we believe, no hernia had manifested itself when Burgess, on October 8, was discharged by Dr. Brewster, and if, as no effort is made to disprove, no other accident was later sustained, the hernia which now disables him must have come, not from trauma, but from congenital weakness.

In the Cooper case we stated that, since the hernia had not previously made itself evident, and since, at the time of the last medical examination, there could be no doubt of its existence, we would have found it difficult to overcome the very natural conclusion that it had been caused by the accident, had it not been for the fact that long after the first accident Cooper had struck himself in the side with an axe while chopping wood at his home. Here there was no such second accident, but, in the light of the expert advice which is in the record, there is no room for doubt that such hernias are rarely caused by external blows and that, in nearly all such cases, the abdominal wall, deficient in strength due to congenital defect, is subjected to sudden stress such as violent coughing, sneezing, or straining at defecation, and that the last named is the most frequent cause of all.

That, prior to being engaged by defendant, Burgess was apparently in perfect physical condition, may well be, and, in fact, that no hernia previously existed is quite evident from Dr. Brewster's examination on September 24th.

We cannot, however, place much credence in the statements of the two friends of Burgess, who testified that, immediately after the accident of September 24, the hernia was apparent even to an inexperienced eye, and that they saw it almost every day, because, as we have already said, had such been the case, Dr. Brewster could not have failed to see it.

Peculiarly enough, in this regard also, this case resembles the Cooper case, in which two witnesses testified that they were in daily contact with the plaintiff and that they themselves saw the hernia often. We found there, as we did here, that, had such hernia existed and had it been apparent, no doctor could have overlooked it.

The two doctors who testified on behalf of plaintiff had no knowledge of his condition prior to the time at which the hernia actually made its appearance.

In such cases as this we well realize that it is quite impossible for courts to determine with mathematical certainty whether hernia actually resulted from accident or from congenital weakness, but we would certainy err more often than we do were we to substitute for what appears to be the preponderating medical opinion any conjecture which we might ourselves make were there no medical opinions in the record.

Here we are well convinced that the preponderance of the expert testimony is with defendant, and we, therefore, must be guided accordingly.

The judgment appealed from is reversed, and plaintiff's suit is dismissed at his cost.