**DOANE v. BOARD OF COM'RS OF PORT
OF NEW ORLEANS.***

No. 16165.

Court of Appeal of Louisiana.   Orleans.
Nov. 4, 1935.

*Rehearing denied Dec. 2, 1935.

Harold A. Moise and Edward M. Heath, both of New Orleans, for appellant.

Gill & Simon, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit for compensation. Doane, formerly an employee of defendant, the Board of Commissioners of the Port of New Orleans, claims that he has been permanently and totally disabled and he prays for judgment for 400 weeks' compensation at $20 per week, subject to a credit for payments made during six weeks.

Defendant board admits that the claimant received injuries, but contends that he has entirely recovered from the effects thereof, and that, if he is now in any way disabled, his condition results from a congenital malformation of the spine, which was not caused or contributed to by the accident. It is especially contended that plaintiff has not successfully borne the burden of proving either that his present condition was caused by the accident, or that his present condition is one of disability.

There was judgment below as prayed for, and defendant has appealed.

.There can be no doubt that the claimant is now suffering from a condition which the physicians call spondylolisthesis. They describe this condition as a slipping forward of one of the vertebræ from its normal position on the one below.

The record leaves no doubt that this condition usually has a congenital cause, and that seldom, if ever, is trauma the initial cause for it. We believe it to be established that Doane, as found by our brother below, "was born with an abnormality that pre-disposed spondylolisthesis." It is, however, also evident that there had been no disabling result from that condition until suddenly, while engaged in assisting in the lifting of a large piece of timber, the claimant felt his back give way and was forced to discontinue work. It is true that at that time the injury did not appear especially serious, but it is equally true that there is now little or no doubt that at that time he suffered from the very condition from which he now complains.

Many experts of established reputation testified in the district court, some on behalf of plaintiff and others on behalf of defendant. Some stated that the condition is not serious. One testified that: "Men are doing work (laborious work) with spondylolisthesis greater than he has and don't know they have it."

Others are equally certain that such a condition is often the result of trauma, and that in claimant's present condition he cannot work at all. That the present condition of disability first manifested itself immediately after the occurrence of the accident seems to be conceded by the specialist on whom defendant mainly relies. He testified that the accident, which unquestionably occurred, was probably "the beginning of that episode."

In cases such as this, courts are obviously forced to rely upon the testimony of medical experts. Judges can have no independent knowledge of such conditions, their causes, and their effects. We have carefully read the various statements of the surgeons and physicians and can do no more than conclude that the district judge was not manifestly in error in reaching the conclusion to which he came. Before him appeared in person the various experts. We have only read their written testimony. He saw the claimant himself and possibly could form some independent conclusion as to his condition. Certainly we cannot do so. We confess that we are often amazed by the fact that medical experts so frequently find themselves so far apart in their conclusions.

It is contended that Doane had done laborious work for seventeen years, evidencing the further fact that the condition of predisposition to spondylolisthesis had existed and that the claimant was unaware

of it. That seems to be evident, but the fact that for seventeen years he was not disabled and that immediately after the episode complained of he did suffer and has suffered ever since, is rather conclusive proof of the fact that that accident was, within the contemplation of the compensation laws, the cause of his present condition.

We are much impressed with the testimony of one of the experts produced by the claimant. He shows that predisposition to spondylolisthesis is congenital, but he also shows that possibly plaintiff would never have been disabled by that condition but for the intervention of some accident such as this. His testimony on that question is as follows:

"Q. Now, in your opinion, is spondylolisthesis of congenital origin or could it be produced as a result of trauma? A. The consensus of opinion is, that spondylolisthesis is of congenital origin, insofar as it is due to failure of two portions of the lumbar vertebra. Understand that the lumbar vertebra is composed of a cylindrical anterior portion called the body. To the sides and posterior aspect of this body are attached bony processes called pedicles and still further back we have the bone continuing to form a ring or arch and this ring of bone is divided in the center for the elements in the spinal canal to pass. During certain stages of development, the individual vertebra component is cartilaginous and then bone replaces this cartilage. The bone develops from certain centers and if the bone centers fail to fuse we have this defect which we speak of.

"Q. You mean spondylolisthesis? A. No, we have a condition spoken of as pre-spondylolisthesis. Spondylolisthesis itself is a separation of the anterior and posterior components of the fifth lumbar vertebra.

"Q. Is it possible for a person to have spondylolisthesis in its congenital state without suffering pain or having any pain whatever? A. Yes, sir.

"Q. Is that condition possible during the normal life of an individual without suffering any pain whatever? A. Yes, if he is not subjected to any undue trauma or posterioral weight it is possible.

"Q. Could a person have spondylolisthesis in its congenital state and suffer a marked degree of pain as a result of trauma? A. Yes.

"Q. Let us suppose that a person is suffering from a congenital state of spondylolisthesis and lifts a heavy object and in so doing turns or twists his back, is it possible that this sudden twisting or lifting of a heavy weight could cause that fifth lumbar vertebra to slip and aggravate that congenital condition to the point where the party would suffer intense pain, or great pain? A. Yes.

"Q. Let's take the case we have under consideration now of Mr. Doane. It is admitted he was carrying a piece of timber twelve inches by twelve inches square and using lug hooks and in lifting that object, straining himself, could that cause a slipping forward of the fifth lumbar vertebra so as to aggravate that congenital condition of spondylolisthesis? A. I think it could."

If a predisposition to spondylolisthesis existed and was congenital, nevertheless, there can be recovery in compensation where it is shown that a traumatic injury sustained in the course of and incidental to the employment awakened, activated, or aggravated the congenital condition which had theretofore been dormant. In Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1918F, 862, the Supreme Court allowed recovery in compensation. The following quotation from that opinion is peculiarly applicable here: "There is scientific evidence in the record that the plaintiff was, after the accident and at the time of the trial, afflicted with locomotor ataxia—what phyicians call tabes dorsalis—and that an accident such as the one on which this suit is founded could not, of itself, have produced that disability. But it also appears from the expert testimony that the one and only disease that does cause locomotor ataxia can remain dormant and undiscovered in the human system a very long time; that there have been cases where the disease did not assert itself within 20 years from the time of infection. There is no proof in this case that the plaintiff would be now or ever disabled by locomotor ataxia if the accident he complains of had not happened. On the contrary, until the accident, he was apparently in ordinary sound health, attending to his daily occupations, unconscious of being diseased, working regularly, earning large wages, and supporting his wife and daughter. The injuries he suffered by the accident, and the immediate change in his physical condition,

leave no reasonable doubt that the accident superinduced, and was the proximate cause of, the disability of which he complains." See; also, Richey v. Union Paving Co. (La. App.) 151 So. 657; Jones v. Lake Charles Co. (La. App.) 153 So. 347; Stovall v. S. Bender Iron Co. (La. App.) 152 So. 387; Vilce v. Lake Charles Stevedores, Inc. (La. App.) 155 So. 297, and Landers v. New Iberia Motor Co. (La. App.) 155 So. 278.

Defendant complains that, on two occasions subsequent to the accident, the claimant sustained back sprains, and it maintains that it was the duty of the claimant to fully explain what these back sprains consisted of. In view of the explanation of the physician as to what is the cause of spondylolisthesis and what are the results therefrom, we think it very evident that these subsequent back sprains resulted from the original traumatic injury, and that they are not evidence of independent injuries which caused the present disability.

The record is a voluminous one. It is entirely possible to read it, and, viewing the testimony of defendant's experts as sound, to reach the conclusion that the claimant is not, at the present time, suffering at all. On the other hand, it is equally possible to read it from the point of view of the experts produced by plaintiff, and, if so, only one conclusion can be reached, and that is that the claimant is, at the present time, totally disabled, and that the cause of his disability was the original traumatic injury sustained in the course of employment.

There is sufficient proof in the record to amply sustain the contention of plaintiff. To this extent he has manifestly borne the burden of proof. There is certainly not sufficient evidence in the record to the contrary to justify the conclusion that the judgment rendered below is manifestly erroneous.

That the rule against reversing a district court on a question of fact, except in the case of manifest error, is applicable to compensation cases, has often been definitely decided.

In Young v. Hillyer, Deutsch, Edwards, Inc. (La. App.) 152 So. 89, 90, the court said: "The district judge's opinion in such cases is not to be lightly regarded, but rather to be given the strongest consideration and great weight unless found to be manifestly erroneous." See, also, Fussell v. Midland Co. (La. App.) 145 So. 698; Mathews v. Mexican Petroleum Corporation (La. App.) 153 So. 57.

Furthermore, in order to reverse a decision of the trial court, it would be necessary to hold the claimant to be a malingerer, and courts are slow to declare claimants malingerers unless the evidence makes it necessary to do so.

In Yelverton v. Louisiana Central Lumber Co. et al., 19 La. App. 21, 138 So. 684, 686, the court said: "The courts are slow to declare one a malingerer, unless it is clearly and conclusively shown, for the reason that a gross injustice might be done to an innocent party. To hold one a malingerer is to hold him to be a perjurer for gain." See, also, Green v. National Manufacture & Stores Corporation (La. App.) 159 So. 412.

We have often heretofore rested the responsibility in matters of this kind upon the shoulders of the members of the medical profession.

In Turner v. New Orleans Ice Cream Co. (La. App.) 154 So. 773, 775, we quoted with approval from Burgess v. American Safe Deposit Co., Inc., 19 La. App. 443, 445, 140 So. 103, the following language: "In such cases as this we well realize that it is quite impossible for courts to determine with mathematical certainty whether hernia actually resulted from accident or from congenital weakness, but we would certainly err more often than we do were we to substitute for what appears to be the preponderating medical opinion any conjecture which we might ourselves make were there no medical opinions in the record."

In Landry v. Phœnix Utility Co., 14 La. App. 334, 124 So. 623, 625, we said: "If we and our brother below have erred, the responsibility must rest with the medical profession and not the judiciary." We must again do so in this instance.

The judgment appealed from is affirmed.

Affirmed.