■-CAVANAUGH, Judge.
This is á suit for total disability under the Workmen’s Compensation Law of the State of-Louisiana. The suit was filed by plaintiff on December 8, 1951 against R, H. Gracey Drilling Company and'its workmen’s compensation ■ insurer, -Employers Mutual "Liability. Insurance Company of *714 Wausau, Wisconsin. The suit was initially .brought for injuries to plaintiff’s back in the nature of back strain incurred on November 6, 1950 and on March 9, 1951, while employed as a rough neck ■ for defendant, R. H. Gracey Drilling Company. The plaintiff alleges that he was paid compensation at the rate of $30 per week for a period of four weeks, or until December 11, 1950, and that he subsequently returned to work for the defendant on February 12, 1951, and for the injuries occurring to him on March 9, 1951, he was paid fifteen weeks’ additional compensation, or a total of nineteen weeks’ compensation. He prayed for judgment against the defendants for 381 weeks’ compensation.
The defendants, R. H. Gracey Drilling Company and Employers Mutual Liability Insurance Company of Wausau, Wisconsin, filed answer to the suit on January 16, 1952. On January 21, 1952, they filed an exception of non-joinder in which it was affirmatively alleged that the plaintiff went to work for Stokes Deep Water Well Works after he suffered the alleged injury on March 9, 1951, and suffered an accident causing an injury to his back and had made demand for workmen’s compensation benefits against Stokes Deep Water Well Works or its workmen’s compensation insurer, Coal Operators Casualty Company; that defendants had denied plaintiff had any disability and alleged that if he did have any disability, it resulted from the accident of July 13, 1951 and that they were not responsible therefor. In the alternative, they alleged that if plaintiff had any disability, the two accidents described in plaintiff’s original petition and the accident occurring on July 13, 1951, contributed equally to plaintiff’s disability, and, accordingly; defendants and Stokes Deep Water Well Works and its insurer were liable in solido to plaintiff; and that Stokes Deep Water Well Works and its insurer were necessary parties to the suit.
After the filing of the exception of non-joinder, plaintiff, on April 24, 1952, filed a supplemental and amended petition im-pleading Stokes Deep Water Well Works and its workmen’s compensation insurer, Coal Operators Casualty Company, as defendants. In this supplemental and amended petition, the plaintiff alleges the same accidents he suffered as set forth in his original petition while in the employ of R. H. Gracey Drilling Company and medical examinations and treatments by Dr. James Gilly of Lafayette, Louisiana, and Dr. J. E. McClellean of Abbeville, Louisiana; that he was discharged and declared able to return to work on June 2, 1951, and that on July 13, 1951, he suffered another back strain while in the employ of Stokes Deep Water Well Works and while enaged in lifting a piece of pipe; that he is suffering from a condition of spondylolisthe-sis, which was aggravated to an extent of producing total disability.
By stipulation prior to the taking ®f any evidence in the case, it was admitted that plaintiff was earning a wage of $1.52 per hour for 8 hours per day, 6 days per week, while in the employ of R. H. Gracey Drilling Company at the time of suffering the accidents, and that his wages were $1 per hour for 8 hours per day, 6 days per week, while in the employ of Stokes Deep Water Well Works; and that Employers Mutual Liability Insurance Company of Wausau, Wisconsin carried the workmen’s compensation liability of defendant, Gracey, and that Coal Operators Casualty Company carried the compensation of defendant, Stokes Deep Water Well Works.
It was also stipulated that both defendants were engaged in a hazardous occupation.
The plaintiff prayed for judgment for 400 weeks’ compensation against all defendants in solido from November 6, 1950, together with $500 for necessary medical expenses; alternatively, against Gracey and Employers Mutual Liability Insurance Company of Wausau, Wisconsin for 381 weeks, and alternatively against these same defendants for 385 weeks from March 9, 1951, and alternatively against Coal Operators Casualty Company for 400 weeks from July 13, 1951. The $500 medical expense is claimed in each alternative demand.
*715 The defendant, Coal Operators Casualty Company, filed an answer of general denial, and defendants, R. H. Gracey Drilling Company and Employers Mutual Liability Insurance Company of Wausau, Wisconsin, in answer to the supplemental and amended petition, admitted the treatment of Drs. McClellean and Gilly and payment of the- compensation set forth for the respective periods and alleged that plaintiff fully recovered from the injuries suffered in each of the accidents and urges that any disability that plaintiff has is the result of a condition known as spondylolis-thesis and that if plaintiff has any disability, which defendants deny, it is that any aggravation from such condition did not occur prior to June 2, 1951, or from any accident received while in its employ.
After trial, the Lower Court rendered judgment in favor of plaintiff and against defendants, in solido, for total permanent disability for a period not exceeding 400 weeks at the maximum rate of $30 per week, subject to a credit of 19 weeks’ compensation which had been previously paid, together with legal interest on each weekly compensation payment from due date until paid and medical expenses incurred or to be incurred not to exceed $500, and all costs.
After the overruling of a motion for a new trial or rehearing, the defendants have suspensively appealed from the judgment.
There is no controversy in this case over the occurrence of the three accidents. The only controverted questions are: (1) Was the plaintiff at the time of the trial of the case suffering total and permanent disability on account of the condition known as spondylolisthesis; (2) Was this condition caused or aggravated by the Accidental injuries sued upon, and, if so, was it produced by only two of the accidents, that is the first and second, or by the third; and (3), was the disability suffered in the accidents permanent or only temporary.
A review of the evidence in this casé shows that on November 6, 1950, while plaintiff was working for R. H. Gracey Drilling Company and after he had carried a sack of mud from the barge to the drilling rig and placed it on the shelf, he bent over to straighten' it and suffered the first back strain alleged in his petition. The nature and extent of this accident is best portrayed by his own testimony as to how he was injured. He stated:
“A. I was carrying mud on my shoulder from the barge to the drilling rig, and I let the sack off my shoulder on the pile, stack or whatever you want to call it, and I 'bent over to straighten the sack out and a pain hit me in my back.
“Q. Were you required to lift the sack in an effort to straighten it when you were bending over it? A. No. Just lift maybe a corner. I didn’t have to lift it completely. I lifted it on the corner or a part of the sack to straighten it out.”
The plaintiff further testified that he experienced pain in his lower back; that he continued to work, but did not carry any more mud from the barge.but dumped mud into the hopper. The evidence from the other witnesses who were in the crew at that time indicates that the plaintiff continued to work for a while after he claims he suffered the strain and then went to his locker to put on a belt to support his back; that he reported the accident to the employee in charge of the rig and that he told him to go change clothes; that he waited for the rest of the crew to come and then went out on the boat and reported to Dr. McClellean. Dr. McClellean referred plaintiff to Dr. Gilly.
The secpnd accident occurred in practically the same way, only plaintiff was putting down a drum of carbide on March 9, 1951, when he had the catch hit him'in the back again. -He went to the locker room to change his clothes, and he said the pain was so severe that he did not put on' his work clothes to work when the boat came out to bring another crew, he went out with it. This timé he reported to Dr. McClelleari and was also referred by him to Dr. Gilly. The: report of Dr. Gilly concerning the injuries and his diagnosis *716 from the first accident, dated December 30, 1950, reads, in part:
“Physical examination shows well-developed white male who walks without a limp. • There is mild flattening of the normal lumbar curve; however,' it reverses itself well. Motion is free and without pain in all directions but there is restriction of about 15 per cent of motion in all directions also without pain. There is no tenderness over the bony points of the spine or pelvis. At this time there was no muscular. tenderness.
“The patient was referred to Doctors Miles and Romagosa of Lafayette fo.r X-ray studies of the spine. These X-rays showed no evidence of fracture dislocation. There was a small spur on the upper anterior margin of lumbar vertebra three. The X-ray showed a very acute lumbosacral angle which is indicative of a mechanical • unstable back.
“With the history of repeated injuries and repeated recurrences of pain after the initial severe injury plus the fact that the man shows restriction of , motion due to mild contracture of muscle groups of the spine. I believe that he shows a picture of chronic back strain due to congenital mechanical weakness of the spine and that he will be prone to have recurrences with just minor trauma. This type of back condition can be helped with a Camp Lumbosacral Support and instructions in the proper method of lifting by maintaining the spine straight rather than bending forward to lift.
“At the time of this examination there was no demonstrable disability.”
and Dr. Gilly’s report on the second accident, dated June 4, 1951, reads:
“Physical examination shows a slender man who walks without a limp. The lumbar curve is present. There is no muscle spasm present. Motion in ■ all directions of the spine is full and normal. Leg tests used ip diagnosing disorders of the low back are negative for any pathology. The neurological examination is normal.
“It is my impression that this man is fully recovered from a second episode of acute lumbosacral strain, which began on March 12, 1951. At this time I can find no demonstrable residual disability. As a matter of caution, I believe that this man should be given light work for a period of approximately six weeks. At the present time I believe he is' able to return to work.”
Dr. Gilly discharged the plaintiff as able to resume work on December 30, 1950 from the first accident, and on June 2, 1951 from the second.
The third accident suffered by plaintiff and herein sued upon was incurred while in the employ of Stokes Deep Water Well Works. This accident occurred on July 13, 1951, when he bent over to lift a swedge, or piece of pipe we understand to be 8 inches in diameter and 3 or 4 feet long. A sharp pain hit him in the back just as he had previously experienced. He fell or leaned up against the truck and was subsequently placed in a truck by other employees and taken to Dr. Mc-Clellean’s office at Abbeville.
Plaintiff first suffered a back injury in 1943 while serving in the Air Corps, when he and other soldiers were lifting heavy bombs on an aircraft. He testified that he felt the muscles give way in his'lower back and suffered great pain and was hospitalized for some time. Between 1943 and the date of the filing of this suit, plaintiff had suffered twelve accidents; eight of them had been low back injuries. After suffering the injury and accident in 1943 while loading the bombs on the airplane, plaintiff, on February 26, 1945, suffered an injury to his eye; on February 9, 1947, while working for E. L. Buckley, he suffered a fractured finger of his right hand'and was paid four weeks’ compensation and, received $150 in settlement. No medical record is in evidence of this injury. On April 27, 1947, while an employee of Falcon Seaboard Drilling Company, *717 plaintiff suffered a fracture of the middle and ring finger of his right hand. He received $120 compensation, along with $150 compensation settlement. On November 30, 1948, while in the employ of Don Crosby Drilling Company as a rough neck, plaintiff suffered a back injury. On this claim, it appears that plaintiff was seen by Dr. McClellean following this injury. Dr.-Kingsley of Alexandria saw him on June 27, 1949, or seven months after the accident. X-rays were made of plaintiff’s spine at that time, as well as a clinical examination. The X-rays showed a spon-dylolisthesis, or the condition of plaintiff’s, back about which he complains in this suit. On December 4, 1949, after the accident on November 30, 1948, plaintiff consulted Dr. McClellean, who supplied him with a belt support. At the time, Dr. Kingsley examined the plaintiff on June 27, 1949 for the Don Crosby accident, plaintiff had begun working on May 8, 1949, or more than 6 weeks prior to the examination. For the back injuries suffered by plaintiff while in the employ of Don Crosby, in addition to the compensation paid, he received as a compromise settlement $575.
On September 21, 1949, while in the employ of Roeser & Pendelton, Inc.,' plaintiff received laceration of the finger and a fracture, which claim was compromised on February 20, 1950, for $625. Dr. Kingsley again saw this plaintiff on January 19, 1950, prior to this settlement on February 20, 1950. In the summer of 1950, plaintiff, again injured his back while working for Latex Construction Company and, according to his own testimony, he was laid up for 2 or 3 weeks. There is little or no evidence to show the nature and extent of the injuries suffered in this accident.
We have" already listed the accident's upon which this suit is predicated. In addition to all of the aforesaid accidents' and injuries suffered by the plaintiff, the record shows that on November 30, 1951, the plaintiff suffered 'another injury 'to his back while working for the Hall Funeral Home in Monroe, Louisiana; ’ lifting an empty ambulance cot weighing about 40 pounds. He was examined by Dr. Kelsey on December 3, 1951, and was examined by Dr. Kingsley on May 29, 1952. On June 1, 1952, after having been examined by Dr. Kingsley on May 29, 1952, plaintiff suffered another back strain when he was bending over playing with one of his children.
In view of the condition of plaintiff’s back, which all .of the doctors describe as spondylolisthesis, which -is usually a congenital condition and defined as “a forward slipping or displacement of one lumbar vertebra on the one beneath, most commonly between the 5th lumbar vertebra arid the top of sacrum (lower back just below level of hip)”, and the great number of back injuries happening to him over the period of time prior to the injuries sued upon, as well as those subsequent thereto, it is important to determine whether there is any difference in plaintiff’s condition to now do work' of a reasonable character than it was when he suffered the injuries sued upon and whether the disability produced by the injuries sued upon was permanent or whether it was only temporary. We have heretofore noted the nature and character of the trauma received in each of the accidents for the purpose of affiliating it, along with the other testimony- in the case and especially the findings of the medical experts.
Plaintiff’s own testimony as to the nature, extent’ and seriousness of the disability and pain he suffered'is expressed by him as follows: ' -
■ “Q. Well, what was the difference in your condition at that time (referring to- the accident of November 6, 1950) and the time just before your accident of November 6, 1950?
“Mr. Putnam: I don’t think the witness is qualified to answer that question. It calls for a médical opinion from the witness.
“The Court: He can describe his feelings. Let him describe what his condition was before and after.
“The Witness: Well, when I injured my back at any'time it takes *718 from 6 to 8 weeks before it gets to where it doesn’t bother me, you can say.
“Q. Now, at the end of that 6 to 8 weeks. your back returns to the same condition it was before the accident occurred, does it not? In other words, you feel just as you did before the accident occurred? A. Well, I feel as good but then I am aware of the weakness there.”
The plaintiff’s evidence on this point further shows that he carried with him on the job a support belt for the condition of his back and on each occasion when he suffered the accident while in the employ of the defendant, R. H. Gracey Drilling Company, he had this belt with him. The evidence of Dr. McClellean, as well as his report to the defendant insurance company, showed that, he was fitted with one of these belts. The evidence of Dr. Gilly also shows that he recommended the wearing of a support belt.
We do not find that there is a great deal of conflict in the medical testimony in the case. The only conflict in the medical evidence as we analyze it is whether or not plaintiff suffered more disability in his back at the time of the trial from the multiple accidents he experienced than he did prior to the time of the first accident on which compensation is claimed. Mr. Mc-Clellean, plaintiff’s family physician for a number of years and who treated him following each of the injuries suffered by him, believes that on account of the fact that since plaintiff had suffered a number of low back injuries over a period of several years, he was prone to have recurrent back injuries and that, on account of having suffered the last three accidents in a course of a few months, or between November 6, 1950 and> July 13, 1951, the condition described as spondylo-listhesis has been aggravated now to the extent of producing total disability in plaintiff to do the hard, laborious work of an oil field rough neck.
Dr. McClellean referred plaintiff to Dr. Gilly, who is an expert orthopedic physician residing in Lafayette. Dr. McClellean is not a specialist, but is a general practitioner. Plaintiff was referred to Dr. Gilly for the first time following the accident of November 6, 1950, and Dr. Gilly diagnosed plaintiff’s condition as lumbosacral strain and at that time had X-rays made of plaintiff’s back. It was not determined that plaintiff suffered the condition described as spondylolisthesis, but the acute lumbosacral angle was found. He wrote the insurance company about plaintiff’s condition and discharged plaintiff as fully able to return to his usual work. This report shows plaintiff to suffer from chronic back strain due to congenital mechanical weakness of the spine and that he will be prone to have recurrence with minor trauma.
It was at the time of this examination and report that the belt support was recommended by Dr. Gilly, and plaintiff was instructed to keep his spine erect when lifting. The plaintiff returned to defendant’s employ on February 12, 1951 and experienced the next sharp pain in his back after working approximately one month, or on March 9, 1951, and in about the same manner that the other one was experienced after he had lifted the drum, or bottle, and set it down on the barge and straightened up. Dr. Gilly treated him off and on for a period of six or eight weeks, and, on June 2, 1951, reported that the plaintiff was physically able to resume his usual work but recommended that he be given light work for six weeks. It is important to note here that both Dr. McClellean and Dr. Gilly stated that if they had known that the plaintiff had suffered another back sprain during the summer of 1950 they would not have recommended plaintiff’s continuing his labors as an oil field rough neck because they felt that on account of the weakened condition of plaintiff’s back resulting. from the several accidents he had experienced he was not physically able to do that kind of work. They compared his back to the condition of a worn out tire on an automobile.
■ Plaintiff was examined and treated by Dr. McClellean on an average of once a *719 year between 1946 and the time of the trial for his bach. He was examined and treated by Dr. Gilly for all of the accidents causing a lumbosacral strain subsequent to November 6, 1950. The last examination made of plaintiff by Dr. Gilly was on June 5, 1952, following the strain plaintiff suffered when he bent over to play with his child. Plaintiff was seen by these two physicians during the episodes of the pain he was suffering from the lumbosacral strains following each accident. The same treatment was prescribed by each of these physicians following the recurrence of the strain. The treatments prescribed were immobilization of the strained muscles, heat and diathermy, and sleeping on a hard bed. Each time, after immobilization of the strained muscles for from eight to twelve weeks, plaintiff made a satisfactory recovery and was able to resume his usual work. He suffered no disability following each of these sacroiliac strains after the recuperative period, and no disability was manifested until he experienced another strain in the performance of his work when he had bent over to do lifting. It is the testimony of these physicians that, because these sacroiliac strains happened more frequently following the accident on November 6, 1950, they believe that the plaintiff is now totally disabled. Can this be a sound basis on which to find a judgment of total disability when the injury and disability only occurs when the plaintiff flexes his back forward in lifting and it is the testimony of these physicians that all of the sacroiliac strains plaintiff has experienced have been incurred when he bent forward to do lifting. It is also their testimony that he is physically able to work until he suffers another sacroiliac strain by bending over and lifting.
In the cross-examination of Dr. Gilly, one fact stands out prominently, and that is when he was asked to explain on what he predicated plaintiff’s disability when there was no change in the bony skeletal, the musculature and ligaments, he was frank to say that the disability with which the plaintiff suffered each time he saw him was a muscular strain, but that the condition was not in the muscles; that it was in the bone and that the weakness was manifested by muscle spasm and pain; and when he was asked if there was no difference in the muscular condition of the back and no difference in the bony structure prior to the time of suffering the first accident on November 6, 1950 and after the recurrence of the subsequent injuries by accidents, he stated there was no difference in the plaintiff, but the difference was his ability to recognize on the basis of performance. He had previously testified that in a mechanically weak back greater stress is thrown on the muscles so that they have a tendency to wear out more frequently, an'd wearing out produces spasm and pain. He was previously asked if the muscle did not regenerate, to which he replied: “Yes”, and later said: “It is not a question of the destruction of a muscle or a bone; it is just a question of overloading”. He further stated that it was not a condition of the muscle; that the muscle is just as normal. Then he was asked:
“But since there has been no change in the structural condition or the bony condition, then why is' there a condition in the muscles that makes it more susceptible ?”
and to this question he answered:
“The condition is not in the muscle; it is in the bone. The weakness in the back is manifested by muscle spasm and pain.”
This explanation is not satisfactory to us, because we believe that if the muscle has worn out by continuous strain, there would have been a different condition in the man, and there would have resulted a different condition in the bony skeletal and ligaments reflected either in the clinical examination or the X-rays. This testimony leads us into the realm of speculation and leaves us bewildered as far as it tends to prove plaintiff’s total disability.
Plaintiff was examined three times by Dr. Kingsley, an orthopedic specialist of Alexandria, Louisiana; two examinations *720 were of the back and one was of injured fingers. He was referred to Dr. Kingsley following the accident for examination and report in June, 1949, for the injuries he suffered while in the employ of Don Crosby Drilling Company on November 30, 1948. X-rays were made of plaintiff’s back at that time, and it was from these X-rays that the spondylolisthesis of plaintiff’s back was first discovered. Plaintiff was seen by Dr. Kings-ley again on January 19, 1950, with reference to an injury to one of his fingers, at which time no back examination was made. Plaintiff was referred again to this physician in May, 1952, for "examination and report after the present suit had been filed. Additional X-ray radiograms were made. According to Dr. Kingsley’s examination, there was no difference at the time of the last examination and the first examination he made of plaintiff in the condition of his back. The bony condition was the same, the musculature, ligaments and soft tissues were the same as they were on his first examination. He was extensively examined both by plaintiffs and defendants and he is positive in his testimony that if the spon-dylolisthesis with which the plaintiff was suffering at the time of his first examination and that with which he is suffering now had been different there would have been some pathology or evidence reflecting that change by the X-rays; that comparison was made of the films first taken in June, 1949, with those made in May, 1952, and that the skeletal bones, muscles and ligaments are the same as they had been previously reported. We think that it is clear by this evidence that if plaintiff had suffered any substantial injury or even an aggravation of the condition described as spondylolis-thesis there would have been some demonstrable evidence disclosed either in his clinical or X-ray exmaination. We can clearly reconcile his evidence with that of Drs. Gilly and McClellean and find that there is no substantial difference in that 'all three agree that a person suffering with a condition'such as that with which plaintiff is suffering is subject to incurring an acute .pain-from a back strain-at any time when he bends forward an-d attempts to do-.apy lifting; that whatever disability or pain a person experienced from the condition of the back which plaintiff has is only temporary unless it is accompanied with sufficient trauma to do damage either to the muscles, ligaments, facia or other soft tissues of the -back or the bony structure of the vertebra. If such trauma is received, it would be reflected in the radiograms.
Plaintiff in his argument and in which he was upheld by the Trial Judge criticizes the examination and report of Dr. Kingsley on his first examination on June 27, 1949, as well as that made in May, 1952, and the reports of the radiologists. Plaintiff reserved his right to rebut the testimony of Dr. Kingsley with the testimony of Dr. Gilly at the time the case was held open to take the deposition of Dr. Kingsley. No further evidence,of Dr. Gilly was taken to interpret the X-ray radiograms made by Dr. Kingsley or under his supervision in June, 1949, or in May, 1952. If there had been any difference in their findings or any difference reflected by the two X-ray examinations this could have been developed by having Dr. Gilly interpret the X-ray radiograms used by Dr. Kingsley in his examination. Plaintiff evidently thought that it was not necessary because Dr. Gilly had testified that there was no difference in the condition of the skeletal frame or the muscles or ligaments of plaintiff’s lower back from the time he first examined him until the time of his last examination on September 8, 1951, from an X-ray standpoint The only difference between the evidence of Dr. Gilly and Dr. Kingsley, as we analyze their testimony, is that Dr. Gilly states that the functional capacity of the back has been impaired in spite of no anatomical changes in the bony structure, ligaments or musculature, whereas the evidence of Dr. Kingsley is that there ,is no decrease in the functional capacity of .plaintiff’s back because there has been no-change in the bony skeletal, ligaments or musculature; that whatever disability the . plaintiff suffered by reason of these three accidents, was only of, a temporary nature. The reasons assigned, by Dr., Kingsley, ap *721 pear to us to be sound when viewed in the light of plaintiff’s own testimony that it takes him from six to eight weeks to recover from one of these lumbosacral strains and that he is then all right until he experiences another strain. This fact is further supported by plaintiff’s work record and his medical experts and their findings and reports until after Dr. Gilly discovered the spondylolisthesis in September, 1951, and which would have been discovered sooner if proper X-rays had been made.
When we view this testimony and consider it along with plaintiff’s own testimony and with that of his own .physicians, Drs. McClellean and Gilly, who on the previous occasions certified that he was physically able to return and do the same work, there is but one conclusion that can be reached under these facts, and that is that the three injuries upon which this claim is «predicated are no different from any of the other back sprains he has incurred and from which he recovered shortly and for which he collected some compensation.
We know and agree that the jurisprudence is that if an employee has a congenital defect and, by reason of such abnormal condition, suffers an accident during the course of his employment which, by reason of said congenital defect coupled with the injury, produces disability to work, he is entitled to compensation. This has been the jurisprudence in this State commencing with the case of Behan v. John B. Honor, 143 La. 348, 78 So. 589, L.R.A. 1918F, 862. This case was cited in the case of Doane v. Board of Commissioners of Port of New Orleans, La.App., 163 So. 717 (Orleans Court of Appeal, 1935), along with Richey v. Union Paving Co., La.App., 151 So. 657, Jones v. Lake Charles Co., La.App., 153 So. 347, Stovall v. S. Bender Iron Co., La.App., 152 So. 387, Vilce v. Lake Charles Stevedores, Inc., La.App., 155 So. 297, and Landers v. New Iberia Motor Co., La.App., 155 So. 278. The last two cases referred to above were decided by this court. In each of the cases the court found that the injured employee suffered disability by reason of the accident’s happening that he would not have suffered if it had not happened, and we held that the disability was permanent and total, and the evidence contained in each'of the records justified such holding.
The point we are concerned with here is whether or not the condition of spondylolis-thesis with which the plaintiff is suffering has been aggravated to such an extent by the recurring of three consecutive accidents to render the plaintiff unable to do and perform his usual work, or if the evidence shows that the effect of the injuries was only temporary and left the plaintiff in the same physical condition as he was prior to incurring them.
We are reluctant to differ with a judge of a trial court in a case'of this kind. He makes the following statement in his opinion: “Plaintiff was carrying, lifting and putting down some object when he experienced the sharp pain in his back on-each occasion.” Our careful study of this record discloses that plaintiff experienced the shárp pain in the accident happening on November 6, 1950, after he had released his burden as well as that after he put the bottle down on the barge, and only when he straightened up. The evidence of the last accident shows that he was bending over lifting on the swedge.
This record is replete with compensation claims of plaintiff on account of industrial accidents since he commenced work following his military service in 1945. Under the present jurisprudence, we are required' to scrutinize the record closely to determine whether any of these prior injuries and accidents for which the plaintiff collected compensation have any bearing on the disability and claim presented in the present suit for total disability. One of the facts found by the Trial Judge and which influenced him in rendering judgment for the plaintiff was that plaintiff had been physically able to do and perform the duties of ■& rough- neck' for approximately two years prior to suffering the accident anddn-jury on November 6, 1950, or-the first accident and injury on which his present dis *722 ability is asserted in this suit. We have carefully reviewed the .testimony on this phase of the case, and we do not agree with the Trial Judge that from the evidence contained in the record this plaintiff steadily performed the duties of a rough neck for a period of two years next preceding the accident and injury on November 6, 1950. The record shows that on November 30, 1948, plaintiff suffered an injury to his back of the same nature and character on which his present complaints are predicated. He received compensation during the period from the- date of this accident until at least May 8, 1949, or did not do or perform any work during that period because he told Dr. Kingsley at the time of his examination on June 27, 1949 for the injuries suffered to his back as an employee of Don Crosby Drilling Company that he had commenced work on May 8, 1949, but for another company. This claim was subsequently compromised for $575, in addition to the payment of compensation during the period of disability. On September 21, 1949, he suffered an injury to a finger by a laceration and fracture while in the employ of Roeser & Pendelton, Inc., for which he was paid compensation in addition to a settlement of $625 effected on February 20, 1950, Dr. Kingsley saw him on January 19, 1950, for this injury to his finger. Following this injury and a compensation settlement therefor, plaintiff suffered a back injury during the summer of 1950 while working for the Latex Company. He states that he was off work two or three weeks on account of the back strain suffered while working for Latex. Therefore, if plaintiff was injured on November 30, 1948, and did not resume work until May 8, 1949, on account of the back injury received while in the employ of Don Crosby Drilling Company and was off work and drawing compensation for the injury suffered on September 21, 1949 to February 20, 1950 on account of the fracture and laceration of the finger, plaintiff really only worked between May 8, 1949 and September 21, 1949. If he commenced work subsequent to his compromise settlement on February 20, 1950 and suffered another back sprain while in the employ of Latex Construction Company during the summer and was off from his work two or three weeks, we do not believe that the Trial Judge’s conclusion that the plaintiff has steadily performed the work of an oil field rough neck for approximately two years prior to November 6, 1950, the date of the first accident while in the employ of Gracey, is substantiated by the evidence contained in the record.
It is our duty to try to reconcile and harmonize all of the evidence in this case— medical and lay testimony — as well as to consider the course of work followed by the plaintiff after each accident. For us to hold under this evidence that these defendants are liable in solido to plaintiff for this condition, which commenced in 1943 and which continued and was in existence when he experienced the first accident sued upon on November 6, 1950, would compel us to disregard all of the disabling conditions from his back for which he had previously collected compensation and ignore the fact that plaintiff’s own physicians say that they would not have recommended for him to continue this work if they had known he had experienced a back injury in the summer of 1950 while in the employ of Latex.
We have reviewed all of these cases cited by plaintiff and relied upon, namely, Doane v. Board of Commissioners of Port of New Orleans, supra; Skyles v. United Investment Corp. 1950, Second Circuit Court of Appeal, 46 So.2d 662; Eldridge v. Manufacturers Casualty Co., 65 So.2d 663, decided- by this court in 1953; Theriot v. Cities Service Refining Corp., 63 So.2d 465, decided by this court. The cases of Skyles v. United Investment Corporation and Doane v. Board of Commissioners of Port of New Orleans are clearly distinguishable from the case at bar. In each of the cited cases the evidence was that each of the plaintiffs had done hard manual labor and had never suffered a prior back injury and suffered no disability from a prior back injury, and that they suffered a substantial injury at the time of trial which was clearly established by the evidence, whereas in the case at bar, as in the Eldridge case which we recently *723 decided, the plaintiff had collected compensation for a number of back injuries and after settlement on each case resumed his usual work. This is apparent in the case at bar because the plaintiff was only disabled for a period of, say, six or eight weeks, and then he resumed his usual work until he experienced another episode of back pain when he bent forward .or straightened up quickly.
The effect of the lumbosacral strains producing the acute pain and disabling injuries is only temporary and produced no disabling condition in the absence of a pathological change reflected by the X-rays or clinical examination.
Our conclusion on the facts in this case is that the lumbosacral strains suffered by the plaintiff on November 6, 1950 and March 9, 1951, while in the employ of R. H. Gracey Drilling Company, and the strain suffered by the plaintiff on July 13, 1951, while in the employ of Stokes Deep Well Water Works Company are the same type and character as received by plaintiff on previous other occasions when he bent forward and strained the muscles of his lower spine producing acute pain, and from which he subsequently recovered. The effects of any injury produced from these lumbosa-cral sprains is temporary and after the muscles of the lower spine are immobilized for a period of six to eight weeks the plaintiff is as physically able as he was at the time of the first accident sued upon to perform his usual work. At any rate, the plaintiff has failed to prove by a preponderance of the evidence that the congenital defect of the spine producing disability to do work of a reasonable character is any different now than it was when he suffered the lumbosacral strains while in the employ of the defendants; whatever disability he suffered was only temporary and soon subsided after each accident, and his chronic condition due to the congenital defect remains as before he suffered the first accident. Rigdon v. Southwestern Transportation Co., La.App., 181 So. 45; Barrett v. Wilson, La.App., 152 So. 795; Eldridge v. Manufacturers Casualty Ins. Co., 65 So.2d 663, supra; Windham v. W. Horace Williams Co., La.App., 18 So.2d 854.
The plaintiff had been in the employ of the Hall Funeral Home at Monroe, Louisiana, for approximately five weeks when he suffered another lumbrosacral strain on November 30, 1951. Therefore, on account: of the strain suffered while in the employ of Stokes Deep Water'Well Works, he was, disabled between July 13, 1951, and the date-, he commenced work for the funeral home,, or for a period of fourteen weeks. Thé-Coal Operators Casualty Company, insurer-of Stokes Deep Water Well Works, did not pay plaintiff any compensation for this temporary disability, and he would be entitled' to recover from it weekly compensation at the rate of $30 per week for a period of fourteen weeks, together with 5% per an-num interest on each weekly payment, or the sum of $420.
For the reasons assigned, the judgment, of the District Court is avoided and re-, versed insofar as it decreed the defendants,. R. H. Gracey Drilling Company and Employers Mutual .Liability Insurance Com-. pany of Wausau, Wisconsin, to owe plain-, tiff any compensation; and the judgment in favor of the' plaintiff and against Coal' Operators Casualty Company for compensation for a period not exceeding 400 weeks, at the rate of $30 per week, less 19 weeks’’ compensation paid, is amended by decreeing that plaintiff is entitled to compensation at the rate of $30 per week for a period of' 14 weeks commencing on July 13, 1951, together with 5% per annum interest on said-weekly payments, or the sum of $420, and; that the costs incurred in the lower court,, as well as the cost of -appeal, be assessed, against Coal Operators Casualty Company,j and plaintiff’s demands for attorneys’ fees, are rejected.